**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

DONALD LACY,                          )
                                      )
                 Petitioner,          )
                                      )
        vs.                           )      Case No. 1:13-cv-811-RLY-DML
                                      )
KEITH BUTTS,                          )
                                      )
                 Respondent.          )

**Entry Discussing Motions for Class Certification**

Petitioner Donald Lacy brings this action pursuant to 28 U.S.C. § 2254, alleging that

requiring his participation in the Indiana Sex Offender Monitoring and Management Treatment

Program ("INSOMM") has violated his federally secured rights and will continue to do so. This

action has been consolidated with those of five other Indiana prisoners who have brought similar

habeas petitions.

Currently before the court are the petitioner's motions for class certification, requesting

that the court certify a statewide class of persons defined as follows:

> All persons incarcerated in the Indiana Department of Correction who have a prior
> sex offense conviction, who have been, or will be asked to participate in the Indiana
> Sex Offender Management Program, and who have, or will refuse to participate
> because they refuse to confess guilt on the primary offense or disclose other
> criminal conduct as required by the INSOMM program.

For the reasons the follow, and with a slight adjustment to the class definition, the motions for

class certification are **granted**.

**I. Background**

The petitioner alleges that the INSOMM program violates his Fifth Amendment right to be free from self-incrimination. Participation in the INSOMM program requires mandatory disclosure of information regarding past behavior, including both past convictions and uncharged offenses. The information disclosed within the treatment group does not remain confidential. Information may be shared with Indiana Department of Correction ("IDOC") personnel, community providers of sex offender treatment services, mental health treatment providers, providers of psychiatric evaluation, substance abuse treatment providers, polygraph examiners, other counseling related services, and family members or support persons up to and including employers or landlords. Additionally, any uncharged offense disclosed involving a minor is reported to Child Protective Services or Law Enforcement. The information shared outside the treatment group includes (but is not limited to) information about the inmate's sex offenses, specific information about their case management, level of group participation and progress in the program. This information is also provided without the inmate's permission to the Indiana Parole Board and Probation Department.

In 2006, the IDOC made participation in the INSOMM program mandatory for any person with a prior sex offense conviction. Currently operating under Executive Directive #12-53, an inmate's refusal to participate in the program results in a disciplinary action, including a demotion in credit class and a reduction of earned credit time.[1] Petitioner Donald Lacy lost credit time based on his refusal to participate in the INSOMM program. He brought the complaint in this action alleging that the program is an unconstitutional violation of his Fifth Amendment right against

---

[1] Credit time in the Indiana State Prison system is dictated by statute. Ind. Code § 35-50-6-3. A person in Credit Class 1 earns one day of credit time for each day of incarceration. A person assigned to Credit Class 2 earns one day of credit for every two days of incarceration. A person assigned to Credit Class 3 earns no credit time. *Id*. Similarly, deprivation of credit time and appeal of any deprivation is dictated by statute. Ind. Code §§ 35-50-6-5; 35-50-6-5.5.

self-incrimination.[2] He asserts that he has lost approximately 2,460 days of good-time credit as a result of his failure to participate in the INSOMM program.

## II. Standard for Class Certification

Rule 23 of the *Federal Rules of Civil Procedure* governs the certification of class actions.[3] In deciding whether to certify a class, the court may not casually accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *see Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

Before addressing Rule 23, however, the court must examine whether the proposed class members are sufficiently definite. To do so, "[t]he plaintiff must . . . show . . . that the class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012). If the class as defined is sufficiently definite, the court turns next the Rule 23(a) factors. It is the plaintiff's burden to prove that an identifiable class exists that qualifies for certification under Rule 23(a). *Oshana*, 472 F.3d at 513.

The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests

---

[2] Mr. Lacy originally brought this action as a civil rights action pursuant to 42 U.S.C. § 1983. The Court dismissed the complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. The Seventh Circuit reversed, but held that because Mr. Lacy sought the restoration of earned credit time, his claims were more properly pursued under 28 U.S.C. § 2254 and Mr. Lacy agreed to convert this action to a habeas action.
[3] While Rule 23 does not directly apply in habeas proceedings, a representative procedure analogous to the class action may be appropriate. *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975).

of the class." Fed. R. Civ. P. 23(a).  Class certification is not appropriate unless the named plaintiff establishes all four prerequisites.  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In addition to meeting the prerequisites of Rule 23(a), the proposed class must satisfy one of the conditions of Rule 23(b).  *Messner*, 669 F.3d at 811; *Oshana*, 472 F.3d at 513.  Under Rule 23(b), a class action that satisfies Rule 23(a) may be sustained if one of the following is true: "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

### III. Discussion

To determine whether class certification is appropriate here, first, the court addresses whether the putative class is sufficiently ascertainable. Next, the court discusses the Rule 23(a) prerequisites to class certification. Finally the court analyzes whether the putative class satisfies Rule 23(b).

A. *Ascertainability*

4

The ascertainability or definiteness of a class is not a prerequisite for class certification enumerated in the Federal Rules, but the Seventh Circuit has made clear that it is nonetheless a requirement for class certification. *See Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012) (declining to certify a putative class because, among other reasons, the class was "fatally indefinite"). To meet this requirement, "[t]he plaintiff must . . . show . . . that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *Jamie S.*, 668 F.3d at 495; *see also Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (holding that "the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable" to warrant certification).

The respondent argues that the proposed class lacks sufficient definition to be identifiable because too many factual inquires must be made to determine whether any particular individual belongs in proposed class. Petitioners define the proposed class as:

> All persons incarcerated in the Indiana Department of Corrections [*sic*] who have a prior sex offense conviction, who have been or will be asked to participate in the Indiana Sex Offender Management Program, and who have, or will refuse to participate because they refuse to confess guilt on the primary offense or disclose other criminal conduct as required by the INSOMM program.

The respondent argues that the proposed class definition does not create a sufficiently ascertainable class because it fails to define a "sex offense conviction." The respondent explains that because the statutes governing sex offense convictions have been amended numerous times, determining whether a person has been convicted of a sex offense for purposes of the class definition requires too many specific inquires to ascertain the class. The respondent also argues that the class definition fails to address issues such as whether INSOMM is part of a particular class member's plea agreement or whether a particular class member admitted guilt through a plea. The respondent

compares the motion for class certification in this case to that in *Noon v. Sailor*, 2000 WL 684274

(S.D. Ind. 2000). The plaintiffs in that case asserted that they were subjected to unconstitutional

strip searches while they were confined in the Harrison County Jail. They sought certification of a

class of:

> all persons arrested for offenses not greater than a misdemeanor, with the exclusion
> of offenses involving misdemeanor possession of controlled substances, and with
> the inclusion of the offense of Operating While Intoxicated, as a class D felony,
> between April 7, 1997 to April 7, 1999 and that were required by the Harrison
> County Jail to remove their clothing for visual inspection of all or part of their
> exposed bodies, unless [there] existed reasonable cause to believe they were
> carrying concealed weapons or contraband.

Rejecting class certification, the court explained "[t]he problem with this proposed class definition

is that the court could not determine whether any individual was a member of the class without

hearing evidence on what would amount to the merits of each person's claim." *Id*. In other words,

to determine whether a person qualifies as a class member, the court would have determine on a

case-by-case basis whether that person was subjected to an unconstitutional search.

No such merits-determination is required here. Unlike the proposed class in *Noonan*, as the

petitioner points out, the IDOC identifies those whom it requires to participate in the INSOMM

program and maintains disciplinary and treatment records of refusals to participate which

document the reason that inmate refused to participate. The IDOC itself, then, maintains records

of those who belong in the class – those who were selected for participation in the INSOMM, but

refused to do so based on their right to be free from self-incrimination. These facts make the

putative class here more like the class that was found to be sufficiently definite in *N.B. v. Hamos*,

26 F. Supp. 3d 756 (N.D. Ill. 2014). There, the plaintiffs sought to certify a class as "All recipients

of Medicaid in the State of Illinois under the age of 21 who are not receiving medically necessary

home and community based services to treat or ameliorate their disorders, and are currently

segregated, or who have segregated or [are] at risk of segregation for the purpose of receiving treatment and services and who would not oppose community services." *Id.* at 762. Because the proposed class definition assumed a specific diagnosis as a condition of class membership, the court found the class to be sufficiently ascertainable. *Id.* at 764. The same is true here. As a condition of class membership, a petitioner must have been disciplined for refusing to participate in the INSOMM program based on his refusal to admit guilt or disclose other conduct as required by the program. This is a sufficiently ascertainable class which will not require complicated fact-specific inquiries to determine.

  B. *Rule 23(a) Factors*

  Rule 23(a) sets out four threshold requirements for class certification: "(1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical . . . of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892-93 (7th Cir. 2012) (alteration in original) (citation and quotation marks omitted). The party seeking class certification bears the burden of proving that these four requirements are met. *See Oshana*, 472 F.3d at 513. The parties dispute whether the petitioners have established any of the four Rule 23(a) requirements. The court will address each of the four requirements.

  1. <u>Numerosity</u>

  The petitioner argues that the first requirement of Rule 23(a), numerosity, is met here. Numerosity requires that members of a class be sufficiently numerous that joinder of all members of the class is impracticable. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Though there is no bright-line test for numerosity, a rule of thumb is that approximately forty members is

sufficient to satisfy the numerosity requirement. *See Hinman v. M and M Rental Center, Inc.*, 545 F.Supp. 2d 802 (N.D. Ill. 2008). Even if an exact number of class members cannot be stated, "a class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable." *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). According to the petitioner, there are 256 people who have refused or were considered not appropriate for treatment in the INSOMM program. Of those, the petitioner explains that 87 have contacted class counsel and purport to meet the class definition. Because there are so many people who have not participated in the INSOMM it is reasonable to believe at this stage that the class is sufficiently numerous to support certification.

To the extent that the respondent argues that some of the purported class members may not be entitled to relief because they may have agreed to participate in the INSOMM program based on plea agreements, it is not necessary at this stage to determine the merits of each individual petitioner's claim. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). "How many (if any) of the class members have a valid claim is the issue to be determined after the class is certified." *Id.* Moreover, the petitioners need not state the exact number in a proposed class, a good faith estimate of the class size is sufficient and the court may rely on common sense to determine whether an estimate of a class size is reasonable. *Murray v. E*Trade Financial Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006).

2. Commonality

The next question in determining whether to certify a class is whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." *In re IKO Roofing Shingle Products Liability Litigation*, 2014 WL 2958615 (7th Cir.

8

2014). The petitioner argues that the commonality requirement is met because the principal issue in this case is whether the IDOC's policy of depriving inmates of good-time credit for refusal to participate in the INSOMM program constitutes unconstitutional compelled self-incrimination. In this case, according to the petitioner, the only individual issues will concern the amount of harm – the amount of credit time lost – to a particular class member. The petitioner argues that it is therefore more efficient for the principal issue, common to the class members, to be resolved in a single proceeding than for it to be litigated separately in individual disciplinary actions and lawsuits.

The respondent argues that petitioner's claim presents more uncommon factual scenarios than common ones. For example, the respondent asserts, some potential class members may have already admitted guilt as a part of a guilty plea. Other potential class members may have agreed to participate in INSOMM as part of a plea agreement. Moreover, the potential class members could have lost credit time due to reasons unrelated to INSOMM. The respondent argues that the petitioners failed to show that the members of the proposed class are persons "who have, or will refuse to participate because they refuse to confess guilt." According to the respondent, the petitioners have only provided a potential class of people who have "refused or were not appropriate for treatment in the SOMMS program," without specifying why these individuals refused or were not appropriate for treatment. Thus, questions exist regarding why each person refused treatment, creating a variety of factual issues which could vary depending upon the individual.

The proposed class definition itself provides that the members have declined to participate in the INSOMM program because of their refusal to confess guilt on the primary offense or disclose other criminal conduct as required. Regardless of whether the class members refused to

participate in the program for other reasons or incurred separate disciplinary actions, this refusal to participate in the INSOMM is common to all. Individuals who refused to participate in the INSOMM program for entirely different reasons are not included in the class. Therefore, as the petitioner points out, the question of whether the class members refused to participate in INSOMM because they refuse to confess guilt speaks to numerosity, not commonality. As discussed above, the petitioners have sufficiently shown at this stage that there are sufficient class members who have been disciplined for refusing to admit guilt as part of the INSOMM program to satisfy the numerosity requirement. Further, to the extent that the respondent argues that some members of the class may have already pled guilty to the underlying offense, this does not rule out the possibility that additional admissions of guilt to the underlying offense or other criminal conduct might violate their right to be free of self-incrimination. To the extent that some potential class members may have agreed to participate in the INSOMM program as part of their plea agreement, there is no evidence that any particular potential class member has such a plea agreement. The petitioner has shown that the question of whether the requirement of the INSOMM program that an individual admit guilt is unconstitutional is a question common to all claims. Accordingly, the petitioner has satisfied the commonality requirement.

       3. Typicality

      The petitioner argues that the typicality requirement is met because he and all class members, are victims of the same policy by the IDOC, namely the practice of depriving inmates of good-time credit for refusal based on their Fifth Amendment rights to participate in the INSOMM program.

      "The key to typicality is based on the relationship between the class representative and the class members; whether the named plaintiff's interests are aligned with those of the proposed class

in such a way that the representative, in pursuing his own claims, will also advance the interests of the class. *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. 2008) (*citing Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, *3 (N.D. Ill., March 20, 2001)). "Rule 23(a)(3)'s typicality requirement is closely related to Rule 23(a)(2)'s commonality requirement." *Pastor v. State Farm Mut. Auto Ins. Co.*, 2005 WL 2453900 (N.D. Ill. 2005) (*citing Rosario*, 963 F.2d at 1018). "(Petitioner's) claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members' and if (plaintiff's) claims are 'based on the same legal theory.'" *Id.* "The class representative's claims must have the 'same essential characteristics as the claims of the class at large.'" *Id.* (*citing De La Fuente*, 713 F.2d at 232).

For the same reasons the respondent argues that commonality is not present, the respondent argues that typicality is not present. The respondent asserts the petitioner's claims are not typical because key factual differences are potentially present among the potential class members. Here, all class members' claims will arise for the same practice – the deprivation of earned credit time and demotion of credit class for refusing to admit guilt as required by the INSOMM program. In addition, because the respondent's predominant claim – that the requirement that a participant in the INSOMM program admit guilt is unconstitutional – will be the same for all members of the class, the petitioner has established typicality.

4. <u>Adequacy</u>

Finally, the petitioner argues that he and counsel are qualified to represent the interests of the class because he shares the interest in the class in ensuring that inmates who refuse participation in the INSOMM program do not lose good-time credit otherwise owed to them by Indiana statute. Because the resolution of this issue depends on purely legal issues, according to the petitioner,

there is little or no possibility of conflict between the representative petitioner and the class members.

The respondent argues that since the petitioner has failed to allege why the other potential class members have refused or were not appropriate for the treatment in INSOMM, petitioner may jeopardize the claims of potential class members if the overall harm petitioner suffered is different from the harm of other potential class members. Thus, according to the respondent, a conflict exists regarding class certification. This is an inaccurate understanding of the proposed class. Again, as provided in the proposed class definition, all class members will have refused to participate in the INSOMM program because of their refusal to admit guilt. The petitioner is an adequate representative of this claim.

The court further finds that the proposed class counsel is adequate to represent the class. She is a Federal Community Defender who practices regularly before this court and was appointed by the court to represent Mr. Lacy in this case.

B. *Rule 23(b)*

The petitioner argues that the claim meets the criteria laid out in Rule 23(b)(3). Rule 23(b) requires that common issues predominate the suit. *Parko*, 739 F.3d at 1086. "The predominance requirement of Rule 23(b)(3) is satisfied" when "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). "Rule 23(b)(3) also requires [petitioners] to establish that a class action would be the 'superior' manner in which to resolve the controversy." *Hubler Chevrolet, Inc. v. General Motors Corp.*, 193 F.R.D. 574, 581 (S.D. Ind. 2000). "One reason to favor a class action is to avoid duplicative lawsuits, which would thereby waste the parties' and the courts' time and resources." *Id.*

Here, the petitioner argues that because "central questions in the litigation are the same for all class members" the predominance requirement of Rule 23(b)(3) has been met. The petitioner explains that the class has one question of law in common – whether the policy of depriving inmates of good-time credit for refusal to participate in the INSOMM program constitutes compelled self-incrimination. According to the petitioner, the policy applies equally to all members of the class and that each member of the class has been subjected to disciplinary action for refusing to admit guilt as required by the INSOMM program. The petitioner further argues that individual disciplinary actions, appeals, and subsequent court filings create the risk of inconsistent results. The respondent argues that the petitioner has failed to allege the class shares an essential factual link because questions remain as to why each potential class member has refused to participate in the INSOMM program. But, again, as the class is defined, each class member would have refused to participate in the INSOMM program based on his or her refusal to admit guilt or provide details about criminal conduct. The policy of IDOC to discipline a prisoner for so refusing is a straightforward agency-wide policy, the constitutionality of which is a common question for all class members. Judicial efficiency and consistency favor a single ruling on the constitutionality of this requirement. Accordingly, the class meets the predominance and superiority requirements of Rule 23(b)(3).

### IV. The Class Definition and Counsel

The court has found that class certification is appropriate here. However, a slight amendment to the class definition would provide added clarity. First, as the respondent argues, whether a person is a "sex offender" as provided in the proposed class definition is not clearly defined. However, because the claims at issue here are based not on the identification of a petitioner as a "sex offender" but more specifically on whether that person was disciplined for

refusing to admit guilt as required by the INSOMM program, that term is unnecessary to the class definition and can be deleted. Further, it is inappropriate in a habeas action to provide future relief – it is impossible to restore credit time that has not been taken. Therefore, the class should be defined to include only those prisoners who have actually lost credit time or suffered a demotion in credit class based on their refusal to admit guilt as required by the INSOMM program. With these slight changes, the court proposes to define the class as follows:

> All persons incarcerated in the Indiana Department of Correction who have been asked to participate in the Indiana Sex Offender Management Program, who have refused to participate because they refuse to confess guilt on the primary offense or disclose other criminal conduct as required by the INSOMM program, and who have been subjected to disciplinary action in the form of lost credit time and/or demotion in credit class as a result.

The parties shall have **fourteen days from the issuance of this Entry in which to show cause why the above should not be the class definition**.

## V. Conclusion

For the foregoing reasons, the supplemental motions for class certification [dkt 48] and [dkt 57] are each **granted** consistent with the foregoing.

In the motion for immediate ruling on class certification motion, the petitioner asserts that class certification will determine the future scope and complexity of this case and seeks a ruling on class certification before a ruling on the motion for a preliminary injunction. That motion [dkt 89] is **granted** consistent with this ruling and with the following: the currently pending supplemental motion for preliminary injunction [dkt 56] is **denied as moot. The petitioners will have through November 15, 2015, in which to file a single, consolidated motion for preliminary injunction that incorporates any necessary argument based on the rulings made in this Entry.** The respondent will have 21 days to file a response and the petitioner will have 7

days to file any reply. The court will set any further schedule that is necessary after this briefing is

complete.



**IT IS SO ORDERED.**


Date: ___9/30/2015___

                                     RICHARD L. YOUNG,  CHIEF JUDGE
                                     United States District Court
                                     Southern District of Indiana



Distributed Electronically to Registered Counsel of Record